**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| L. ZINGERMAN, D.D.S., P.C., d/b/a Niles Family Dental, individually and on behalf of all others similarly situated, | CASE NO:  1:14-CV-07835 |
| Plaintiff, | |
| v. | |
| NISSAN NORTH AMERICA, INC., a California corporation, | JURY TRIAL DEMANDED |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff L. Zingerman D.D.S., P.C., d/b/a Niles Family Dental ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge of facts pertaining to it and on information and belief as to all other matters, by and through undersigned counsel, brings this Class Action Complaint against defendant Nissan North America, Inc. ("Defendant").

## NATURE OF THE ACTION

1.      This class action stems from Defendant's failure to deliver what was promised. Through advertisements and other means, Defendant represented that its 2014 Infiniti Q50 ("Q50") automobiles possessed an InTouch telematics system ("InTouch") through which certain mobile phone apps would be accessible, including Pandora, Facebook, iHeartRadio, and Online Google Search; emails could be accessed and read aloud; and a calendar could be accessed (collectively, the "Advertised Apps/Functions"). Contrary to these representations, until late-September 2014, at the earliest (if at all), purchasers and lessees of Q50s were unable to access the Advertised Apps/Functions through InTouch. And, even though Defendant has recently claimed to be releasing products to make the system operate as represented, the effort has been

less than effective. As of the date this Class Action Complaint was filed, purchasers and lessees of Q50s could not access or utilize apps other than Google and Facebook, and, importantly, only after their Q50s had been returned to a dealership for the installation of an upgrade. Indeed, on or about October 1, 2014, Leon Zingerman ("Mr. Zingerman"), Plaintiff's President, attempted to obtain the upgrade and when contacting the Infiniti dealership to do so, was advised that they were unaware of it, did not know how long installation of the upgrade would take, and did not know when it would be prepared to perform the upgrade.

2.      Defendant released the 2014 Q50 luxury sedan in the United States on or around August 2013. It was introduced as a embodying "an array of advanced technologies designed to add driving exhilaration and a new level of active and passive safety concerns."[1] Defendant's promotional materials and public statements emphasized the technology offered by the Q50. A major feature of the Q50, emphasized in promotional materials, was the ability to access the Advertised Apps/Functions through the vehicles' InTouch.

3.      In order to access the Advertised Apps/Functions through InTouch, Plaintiff and the other Class members needed to download the Infiniti InTouch App (the "InTouch App") onto their smartphones and to obtain a software update from an authorized Infiniti retailer. It was not until mid-September 2014 that the InTouch App became available in the United States. And, Defendant did not begin notifying Q50 owners and lessees that a software update was available and could be installed by authorized Infiniti retailers until the end of September 2014, if at all. Further, the software update leaves the InTouch system incomplete and not in conjunction with the representations made regarding the product prior to and at the time of sale.

---

[1]     Press Release, First Customers Take Delivery of Their New Infiniti Q50 (Aug. 8, 2013), available at http://infinitinews.com/en-US/infiniti/usa/releases/first-customers-take-delivery-of-their-new-infiniti-q50?page=26&query (last visited Sept. 22, 2014).

4.      Without the InTouch App/Functions, the Q50s purchased and leased by Plaintiff and other Class members did not perform as advertised, as promised, and as warranted. Consequently, Plaintiff and the other Class members received a car worth less than as represented and less than what they paid for when purchasing and leasing their Q50.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331, 1332(d), and 1367(a). The Court has jurisdiction under §§ 1331 and 1367, because this civil action arises under the laws of the United States, specifically 15 U.S.C. § 2301 *et seq.*, and the state law claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy. The Court also has jurisdiction under § 1332(d), because this matter was brought as a class action under Fed. R. Civ. P. 23, at least one proposed Class member is of diverse citizenship from Defendant, the proposed Class includes more than 100 members, and the aggregate amount in controversy exceeds five million dollars ($5,000,000), excluding interest and costs.

6.      Venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within the Northern District of Illinois.

## PARTIES

7.      Plaintiff L. Zingerman, D.D.S., P.C., is an Illinois corporation headquartered in the State of Illinois. It purchased a model year 2014 Q50 on October 30, 2013, and continues to own its Q50. Prior to purchasing its Q50, Plaintiff, through its President, Mr. Zingerman, was aware of the InTouch System and it was a material part of its purchase and the consideration paid for the Q50. Prior to the purchase, Plaintiff, through Mr. Zingerman, was made familiar with the

3

InTouch System and the touted capabilities which it has yet to either be capable of performing or performing, and relied on same, through Infiniti advertisements, such as the Infiniti web-site, and representations made by the sales staff at the Infiniti dealership from which the vehicle was purchased, said representations believed to be in accordance with Infiniti directives, policies, and knowledge regarding the sale of the Q50s. Plaintiff purchased the Q50 based, in material part, on Defendant's representations that it would be able to access the Advertised Apps/Functions via InTouch. Since the time of purchase, Plaintiff has been unable to access any of the Advertised Apps/Functions via InTouch as promised. As a result, Plaintiff received less than what it paid for when purchasing its Q50, because its vehicle did not possess the qualities and attributes Defendant represented it had and would have.

8.  Defendant is a California corporation and its principal place of business is located in Franklin, Tennessee. Defendant is the North American subsidiary of Nissan Motor Co. Infiniti is a division of Defendant selling luxury vehicles within the United States and Illinois. Defendant designed, manufactured, marketed, distributed, leased, and sold, through its authorized dealers and distributors, the Q50 in the United States to Plaintiff and the other Class members.

## FACTUAL BACKGROUND

### The Q50 and the InTouch Telematics System

9.  The Infiniti Q50 is a luxury sedan that debuted in the United States in August 2013. Since then, it has become Infiniti's best-selling vehicle in the United States. More than 40,000 Q50s have been sold in the United States since its introduction.

10. InTouch is a standard feature on all Q50s. With the introduction of the 2014 model Q50 in August 2013, Defendant sought to stake Infiniti's claim as a pioneer of in-car

technology. InTouch's represented ability to access Advertised Apps/Functions was a material part of Defendant's strategy to emphasize the technology offered by Q50s.

11.     Through written advertisements, press releases, public statements, vehicle inserts, and other materials, Defendant represented that owners and lessees of Q50s would be able to access the Advertised Apps through InTouch, would be able to access their emails through InTouch, and would be able to access a calendar through InTouch. Defendant also portrayed Q50s' purported ability to access the Advertised App/Functions through visual displays, including pictures placed in advertisements and other promotional materials depicting the console of Q50s with squares for Pandora and other Advertised Apps. The message of these advertisements and promotional materials was that owners and lessees of Q50s would be able to access the Advertised Apps/Functions through InTouch.

12.     When the Q50 was introduced at the North American International Auto Show in January 2013, Infiniti's former President, Johan de Nysschen, boasted, "We have new technologies that embrace the way people live today—seamless connectivity and personalization everywhere they go, including while in their car, with an optimized human-machine interface for ease of use."[2]

13.     De Nysschen also boasted that the Q50 is the first Infiniti to "completely crystallize our future performance, design, and technology direction." InTouch was touted as a system that "provides integration of smartphone apps in a way that is safe and easy to use while

---

[2]     Telematics Update, *Detroit Auto Show Weekly Brief—1.21.2013*, available at http://analysis.telematicsupdate.com/fleet-and-asset-management/detroit-auto-show-weekly-brief%E2%80%_941212013 (last visited Sept. 22, 2014).

driving." In summarizing the technology offered in the Q50, de Nysschen stated, "Some day, all cars will use this technology; but today, you can only get it on an Infiniti."[3]

14.     Contrary to Defendant's representations, the InTouch App was not available for download until mid-September 2014, and the software upgrade required to access the Advertised Apps/Functions (excluding Pandora) through InTouch, to access and have emails read aloud through InTouch, and to access a calendar through InTouch, was not available until at the earliest late-September 2014, if at all. As of October 1, 2014, owners and lessees could not access the Pandora app through InTouch.

15.     From the time of acquiring, whether by lease or purchase, their Q50s, until (at the earliest) late-September 2014, Plaintiff and other Class members were unable to access Facebook, Pandora, iHeartRadio, and Online Google Search through InTouch, could not access email and have their emails read to them through InTouch, and could not access their calendars through InTouch.

16.     Q50 drivers have not been able to enjoy the level of connectivity and integration described and promised in Defendant's statements, writings, and advertising.

17.     Defendant represented that InTouch Apps, including access to the Advertised Apps/Functions through InTouch, would be available in the fall of 2013.

18.     When Defendant failed to meet this promise, it represented that InTouch Apps, including access to the Advertised Apps/Functions through InTouch, would be available in December 2013. Defendant also failed to meet that promise.

---

[3]    Press Release, 2014 Infiniti Q50 Sedan Makes World Debut at North American International Auto Show (Jan. 14, 2013) http://infinitinews.com/en-US/infiniti/usa/releases/2014-infiniti-q50-sedan-makes-world-debut-at-north-american-international-auto-show?mode=print (last visited Sept. 22, 2014)

19.    Because of Defendant's emphasis on the Q50s' technology, customers have been understandably vocal and upset with InTouch's failures. The following is a collection of some of the comments posted on various forums and review websites:

- One reviewer said:

We were promised this app in Fall 2013, then December 2013, then they stopped talking about it altogether. Now in September 2014 it is released and it is completely useless. . . . [N]one of the apps work. Ridiculous experience on the Q50.[4]

- Another stated:

I don't even care anymore. Infiniti has lost my business. At least for buying new model cars."[5]

- On November 26, 2013 and in response to rumors that InTouch would be available in February, one Q50 lessee said:

The update is coming February? So I'm going to drive this car for 1/6 of the lease term without the software I bought the car for in the first place?[6]

- Q50SFlorida said on July 9, 2014:

I have a brand new, 2 day old Q50S 2014, I was sold on the idea of the apps, but I guess they don't really work. I had Facebook and Google search before I connected to the Intouch app, once connected these disappeared. I was able to download the email application but now I can't connect, it says 'can't connect to the server.' I contacted Infiniti and they said 'they are working on the problem' so I guess I'll wait, even though I think the problem has been going on for a year and no answer.[7]

---

[4]    Infiniti InTouch app review at the Google Play Store, available at https://play.google.com/store/apps/details?id=com.infiniti.intouch&hl=en (last visited Sept. 22, 2014).

[5]    Review by Q50Aggie, available at http://www.infinitiq50.org/forum/q50-touch/15042-intouch-app-release-3.html (last visited Sept. 22, 2014).

[6]    Review by fjmdfw, available at http://www.infinitiq50.org/forum/q50-touch/15042-intouch-app-release-6.html (last visited Oct. 3, 2014).

[7]    Review by Q50SFlorida July 9, 2014, available at http://www.infinitiq50.org/forum/q50-touch/18354-intouch-app-android-download-10.html (last visited Sept. 22, 2014).

7

- One reviewer described her experience with Defendant's customer service:

Have had this vehicle for 6 months and continue to have issues with the intouch system. Have brought it back to the dealer twice and I am now convinced that they have no clue as what to do to resolve the issues. Called Infiniti consumer hot line and that was a complete joke. If the intouch worked properly it would be a great car, but it doesn't![8]

- On January 2, 2014, a frustrated reviewer said:

This is getting ridiculous, apps like Pandora have been on dozens of cars for almost two years, how is it that Infiniti releases a car that is supposed to be known for its technology and 5 months later we still don't have apps that corolla owners had a year ago?[9]

- On January 20, 2014, a reviewer said:

[The calendar] and the advertised email functionality were for me major factors in my decision to choose this vehicle over others. The fact that a third of a year later we are still waiting for this functionality, with no real information on when it will arrive, is very disappointing.[10]

- Another stated:

They advertised it, the salesperson bragged all about how cool it's going to be "Next Month when they are released," and it's not here. I'm not sure how big a part that played in my purchasing decision, but I know it meant something.[11]

- Another reviewer opined:

I want/need Calendar and Emails, I'm a Systems Manager and believe me, I get tons of email that I need to reply ASAP. That indeed was part of my decision to

---

[8]     Review by Sucker July 1, 2014, available at http://www.cars.com/infiniti/q50/2014/consumer-reviews (last visited Sept. 22, 2014).

[9]     Review by BenW, Jan. 2, 2014, available at http://www.infinitiq50.org/forum/new-2014-q50-general-discussion-forum/5065-intouch-apps-late-availability-3.html (last visited Sept. 23, 2014).

[10]     Review by MikeElmendorf Jan 20, 2014, available at http://www.infinitiq50.org/forum/new-2014-q50-general-discussion-forum/5065-intouch-apps-late-availability-5.html (last visited Sept. 23, 2014).

[11]     Review by BNB-Ryan, available at http://www.infinitiq50.org/forum/new-2014-q50-general-discussion-forum/5065-intouch-apps-late-availability-9.html (last visited Oct. 3, 2014).

buy the car, so I can say that on that regard, I'm feeling [emoticon of a red face frowning].[12]

20.    The InTouch App was not made available for general use in the United States from August 2013, when the Q50 was introduced, until mid-September 2014.  Defendant has not publicly indicated a reason for the delay and general unavailability of the InTouch App.

21.    Defendant has refused to acknowledge it made mistakes or attempt to address its customers' concerns. When a customer asked on Defendant's Facebook page when the Q50 software update would be ready to install, Defendant responded only: "For any future updates please visit the InTouch website . . . ."

22.    Another customer indicated that Defendant gave him the following information:

We are sorry to hear about the experience you are having with your 2014 Infiniti Q50 and apologize for any inconvenience this may have caused you.  Infiniti is still diligently working on Infiniti InTouch Apps™.  When the new feature will be available has not been determined.    Infiniti will, however, provide more information when it is available. We apologize we are not currently able to provide more specific detail. The patience of all our valued customers is greatly appreciated while we give the matter our full and utmost attention.[13]

23.    The InTouch webpage at infinitiusa.com contains the following image:

---

[12]    Review by erasat Jan. 17, 2014, available at http://www.infinitiq50.org/forum/new-2014-q50-general-discussion-forum/5065-intouch-apps-late-availability-4.html (last visited Sept. 23, 2014).

[13]    Review by FolsomDude Sept. 18, 2014, available at http://www.infinitiq50.org/forum/q50-touch/45058-we-have-apps-ladies-gentlemen-4.html (last visted Sept. 22, 2014).



24.     Whereas the "Infiniti Connection" and "SiriusXM" tabs contain a hyperlink that directs you to learn more about these features, the InTouch Apps tab does not provide further information.   Rather, it displays trademarks of Google and Facebook along with a calendar, email, and GPS icon.   The page refers to the InTouch App's ability to "let you personalize your drive with everything that's important to you."   Through the depiction of the icons and the statement together, Defendant represents that the InTouch system currently enables full connectivity to the drivers' smartphone, Google, Facebook, email, and calendar.

25.     Defendant provided an interactive sample of the various features provided by the InTouch system at 24simulator.com/infiniti/itgen5/. This website allowed users to access the various menus and submenus of the InTouch system, to tinker around, and see how the system works in the Q50.  The webpage includes, among others, Google online search and Facebook, as well as icons for calendar and email.  When these icons are clicked, numerous submenus appear that display the capabilities of these apps.  For example, the Facebook icon opens to submenus indicating that the user can check the newsfeed, update his or her status, view events, and access other features offered by the Facebook mobile app.  This webpage represents and affirms the fact

that the Google search, Facebook, email, and calendar apps are available with the InTouch system and can be synched with the user's smartphone.

26.     On or about September 29, 2014, Defendant finally began notifying certain Class members that the InTouch App was available and that they could access the Advertised Apps/Functions (excluding Pandora) via InTouch after obtaining a software update from one of Defendant's authorized retailers.

27.     During the period of time when the Advertised Apps/Functions were unavailable, Defendant did not explain the reason for the delay and unavailability of the InTouch App and has not offered any compensation to Plaintiff and the other Class members for the substandard performance of the Q50 and the unavailability of the Advertised Apps/Functions. Instead, Defendant simply informed Q50 owners that the InTouch App was not available, that it did not know when the InTouch App would be available, and asked Q50 owners to wait until an unspecified future date for it to offer the capabilities and functions that it promised Q50 owners could enjoy "today."

## CLASS ALLEGATIONS

28.     This action is brought as a class action pursuant to Fed. R. Civ. P. 23, on behalf of a Class defined as follows:

> All persons and entities that purchased or leased a 2014 Infiniti Q50 for end use
> and not for resale.

Excluded from the Class are: (i) Defendant and its officers and directors, agents, affiliates, subsidiaries, authorized distributors and dealers, (ii) all Class Members that timely and validly request exclusion from the Class, and (iii) the Judge presiding over this action.

29.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of its claims on a class-wide basis using the same evidence as

would be used to prove those elements in individual actions alleging the same claims.

30.     The members of the Class are so numerous that joinder of the Class members would be impracticable. On information and belief, Class members number in the thousands. The precise number of Class members and their addresses are presently unknown to Plaintiff, but may be ascertained from Defendant's records.

31.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

   a.     whether Defendant engaged in the conduct alleged herein;

   b.     Whether Defendant misrepresented that purchasers and lessees of model year 2014 Q50s would be able to access the Advertised Apps using InTouch, access emails and have emails read aloud through InTouch, and access a calendar through InTouch;

   c.     Whether Defendant's representations regarding the functionality of Q50s' InTouch systems were likely to mislead a reasonable consumer;

   d.     whether Defendant breached express warranties with Plaintiff and the other Class members when it produced, distributed, and sold Q50s that lacked the capabilities represented;

   e.     whether Defendant's conduct violated the Illinois Consumer Fraud Act;

   f.     whether Plaintiff's and the other Class members' Q50s were worth less than as represented as a result of the conduct alleged herein;

   g.     whether Plaintiff and the other Class members have been damaged and, if so, the extent of such damages; and

   h.     whether Plaintiff and the other Class members are entitled to equitable relief, including but not limited to, restitution and injunctive relief.

32.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous

common questions that dominate this action.

33.     Plaintiff's claims are typical of the claims of the other Class members because, among other things, Plaintiff and the other Class members were injured through the substantially uniform misconduct described above. Plaintiff is advancing the same claims and legal theories on behalf of himself and all other Class members, and no defense is available to Defendant that is unique to Plaintiff.

34.     Plaintiff is an adequate Class representative because it will fairly represent the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions. Plaintiff and its counsel are committed to prosecuting this action vigorously on behalf of the Class they represent, and have the resources to do so.   Neither Plaintiff nor its counsel has any interest adverse or antagonistic to those of the Class.

35.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system should not be required to undertake such an unnecessary burden. Individualized litigation would also create a potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I

### Violation of Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

36.     Plaintiff realleges and incorporates by reference paragraphs 1–35 as if fully set forth herein.

37.     Plaintiff is a "consumer" within the meaning of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301(3).

38.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)–(5).

39.     The Q50 is a "consumer product" within the meaning of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301(1).

40.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer that is damaged by the failure of a warrantor to comply with a written warranty.

41.     Defendant's representations as described herein that Plaintiff and other Class members would be able to access the Advertised App/Functions through Q50s' InTouch are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

42.     Defendant breached the warranties as described herein. Contrary to Defendant's representations, Plaintiff's and Class members' Q50s were not equipped with InTouch systems that could access the Advertised Apps/Functions. As such, Plaintiff's and the other Class members' Q50s did not function as promised.

43.     Defendant knew that Plaintiff and the other Class members were unable to access the Advertised Apps through InTouch, could not access their emails or have their emails read aloud through InTouch, and could not access their calendars through InTouch.

44.     Defendant knew, or should have known, of its misrepresentations and omissions regarding the capabilities of Q50s, yet proceeded with a coordinated advertising campaign through which Defendant misrepresented that Q50s were capable of performing tasks and functions that they could not.

45.     Plaintiff and Class members were damaged as a result of Defendant's breach of written warranty, because they received a product incapable of performing the functions Defendant represented such product was capable of performing, rendering their Q50s less valuable than as represented.

## COUNT II

### Breach of Express Warranty

46.     Plaintiff realleges and incorporates by reference paragraphs 1–35 as if fully set forth herein.

47.     Plaintiff and other Class members formed a contract with Defendant at the time they purchased their Q50s. The terms of the contract include the promises and affirmations of fact and express warranties made by Defendant.

48.     Defendant's 2014 New Vehicle Limited Warranty provides that "Infiniti warrants all parts of your 2014 Infiniti vehicle supplied by Infiniti, except for those listed under the caption "WHAT IS NOT COVERED." No item under the section "WHAT IS NOT COVERED" describes failures to or unavailability of InTouch.

49.     Plaintiff's and the other Class members' Q50s did not perform as promised. The InTouch App required to enable connectivity between one's smartphone and InTouch was not been made available until mid-September 2014. And, it was not until late-September 2014, if at all, that Defendant began making available at authorized Infiniti retailers the software update required to access the Advertised Apps (excluding Pandora) through InTouch, to access emails and have emails read aloud through InTouch, and to access a calendar through InTouch. As of October 1, 2014, owners and lessees of Q50s could not access the Pandora app through InTouch.

50.     Defendant has actual knowledge that it breached express warranties with Plaintiff and the other Class members related to the Q50.

51.     Defendant breached the terms of the express warranties with Plaintiff and other Class members by not providing Q50s with the capabilities and functionality as advertised.

52.     As the foreseeable and actual result of Defendant's breach of express warranty, Plaintiff and the other Class members were damaged in an amount that is difference between the value of Q50s if they had possessed the qualities and attributes represented and the value of the Q50s they actually received.

## COUNT III

## Violation of the Illinois Consumer Fraud Act

53.     Plaintiff realleges and incorporates by reference paragraphs 1–35 as if fully set forth herein.

54.     The Illinois Consumer Fraud Act prohibits unfair and deceptive acts or practices in the conduct of trade or commerce. 815 Ill. Comp. Stat. 505/2.

55.     Plaintiff and other Class members are consumers that purchased or leased a Q50 for end use and not for resale.

16

56. Defendant's conduct, as described above, in misrepresenting Q50s' technological features and emphasizing Q50s' InTouch system as capable of performing certain tasks it was unable to perform, while omitting the facts that InTouch could not access the Advertised Apps/Functions, could not access emails and read emails aloud, and could not access a calendar, constitutes an unfair practice and was likely to mislead a reasonable consumer.

57. A reasonable consumer would consider the availability of the Advertised Apps/Functions to be important when making a decision whether to purchase a Q50.

58. Defendant's practices offended public policy, were immoral, unethical, oppressive, and unscrupulous, and caused substantial injury to consumers.

59. Defendant's unfair and deceptive acts or practices were the foreseeable and actual cause of Plaintiff and other Class members suffering actual damage on account of receiving a car that lacked the capabilities and functionality Defendant represented the vehicles to have.

60. Plaintiff and the other Class members paid a particular price for a car that was supposed to meet certain specifications. When they received a vehicle that did not conform to these specifications and which fell below the standards set by and described in Defendant's representations, Plaintiff and the other Class members were damaged on account of receiving a car worth less than as represented.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

A. Certifying the Class under Federal Rule of Civil Procedure 23 as requested herein;

B. Appointing Plaintiff as Class Representative and undersigned counsel as Class Counsel;

C. Finding that Defendant engaged in the unlawful conduct as alleged herein;

D. Awarding Plaintiff and the other Class members actual, compensatory, and consequential damages;

E. Awarding Plaintiff and the other Class members statutory damages;

F. Awarding Plaintiff and the other Class members declaratory and injunctive relief;

G. Awarding Plaintiff and the other Class members restitution and disgorgement;

H. Awarding Plaintiff and the other Class members exemplary damages, should the finder of fact determine that Defendant acted with malice or oppression;

I. Awarding Plaintiff and the other Class members pre-judgment and post-judgment interest on all amounts awarded;

J. Awarding Plaintiff and the other Class members reasonable attorneys' fees, costs, and expenses; and

K. Granting such other relief as the Court deems just and appropriate.

## **<u>JURY TRIAL DEMAND</u>**

Plaintiff, individually and on behalf of all others similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on all claims so triable.

DATED:        October 7, 2014                    Respectfully submitted,

                                                                s/  Ben Barnow

                                                                Ben Barnow
                                                                Sharon Harris
                                                                Erich P. Schork
                                                                Jeffrey Blake
                                                                BARNOW AND ASSOCIATES, P.C.
                                                                1 North LaSalle Street, Suite 4600
                                                                Chicago, Illinois 60602
                                                                (312) 621-2000 (p)
                                                                (312) 641-5504 (f)
                                                                b.barnow@barnowlaw.com
                                                                s.harris@barnowlaw.com
                                                                e.schork@barnowlaw.com
                                                                j.blake@barnowlaw.com

                                                                *Plaintiff's Counsel*

18