IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| L. ZINGERMAN, D.D.S., P.C. d/b/a NILES FAMILY DENTAL, individually and on behalf of all others similarly situated, )<br><br>Plaintiffs,<br><br>v.<br><br>NISSAN NORTH AMERICA, INC.,<br><br>Defendant. | No. 14 C 7835<br><br>Judge Virginia M. Kendall |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff L. Zingerman D.D.S., P.C., individually and on behalf of a putative class, instituted this action against Defendant Nissan North America, Inc., contending that Nissan misrepresented the availability of certain technology in its 2014 Infiniti Q50 automobile. Specifically, Zingerman contends that Nissan represented that the Q50 was equipped with an interactive telematics system called "InTouch" through which users could access a number of mobile phone applications when, in actuality, the InTouch system could not perform the multitude of tasks Nissan claimed it would. Zingerman's three-count Complaint alleges violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* (Count I) and state law claims of breach of express warranty (Count II) and violation of the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 502 *et seq.* (Count III). Nissan now moves to dismiss the Complaint in its entirety for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 20.) For the following reasons, the Court grants in part and denies in part Nissan's motion. With respect to Count I, the Court dismisses Zingerman's Magnuson-Moss count to the extent it relies on Nissan's Limited Warranty. The Court denies the remainder of Nissan's motion to dismiss.

## BACKGROUND

The Court takes the following allegations from the Complaint and treats them as true for purposes of this motion. *See Vinson v. Vermilion County, Ill.*, 776 F.3d 924, 925 (7th Cir. 2015). The crux of the lawsuit stems from Zingerman's purchase of a 2014 Q50 on October 30, 2013, in part because of the availability of the InTouch system and its capabilities. (Dkt. No. 1, Compl. ¶ 7.) When making his purchase decision, Zingerman relied on Infiniti advertisements, the Infiniti Website, press releases, vehicle inserts, and sales staff representations that stated that the InTouch system would be fully operational. (*Id.* at ¶¶ 2, 7, 11.) Zingerman has yet to be able to access any of the advertised mobile phone applications through the InTouch system. (*Id.* at ¶ 7.)

Nissan, through its Infiniti division, has sold over 40,000 Q50s in the United States since its debut in August 2013, making it Infiniti's most popular vehicle in the country. (*Id.* at ¶ 9.) The InTouch system is a standard feature on all Q50s. (*Id.* at ¶ 10.) Nissan touted the InTouch system as being able to access an array of mobile phone applications, including internet radio services, Facebook, and Google Search. (*Id.* at ¶ 1.) Nissan also claimed that the InTouch system could access and read both emails and a personal calendar. (*Id.*). Nissan represented that the InTouch system would be available in the fall of 2013. (*Id.* at ¶ 17.) Once Nissan failed to release the necessary software for InTouch in the fall, it represented that InTouch would be operational in December 2013. (*Id.* at ¶ 18.) Contrary to Nissan's statements, however, Q50 owners were unable to utilize InTouch until late-September 2014, and Zingerman still cannot. (*Id.* at ¶¶ 1, 14.) In order to access InTouch at all, Q50 owners needed to download the InTouch application to their smart phones and obtain a software update from a Nissan dealership. (*Id.* at ¶ 3.) The phone application only became available in the United States in September 2014. (*Id.*) Zingerman

attempted to obtain the software upgrade required to use InTouch from a Nissan dealership, but the dealership stated that it was unaware of the upgrade and did not know when it would be available. (*Id.* at ¶ 1.) A successful software update nevertheless leaves the InTouch system incomplete and inconsistent with Nissan's representations before Zingerman purchased a Q50. (*Id.* at ¶¶ 3, 14, 15.) Zingerman alleges that a number of Q50 owners share his frustration and purchased the Q50 because of its mobile phone connectivity. (*Id.* at ¶ 19.)

Nissan provided a copy of the Limited Warranty included in the sale of a Q50.[1] (Dkt. No. 21, Ex. A, Limited Warranty.) The Limited Warranty provides that "Infiniti warrants all parts of your 2014 Infiniti vehicle supplied by Infiniti . . ." (Compl. ¶ 48.) The Limited Warranty states that the "warranty gives [purchasers] specific legal rights, and [purchasers] may also have other rights which vary from state to state." (Limited Warranty at 5.) The Limited Warranty further states that "Infiniti does not authorize any person to create for it any other warranty, obligation or liability in connection with this vehicle." (*Id.*) Nissan directs purchasers to contact the Better Business Bureau Auto Line "before exercising rights or seeking remedies under the Federal Magnuson-Moss Warranty Act . . ." (*Id.* at 4.)

**LEGAL STANDARD**

In order to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Lodholtz v. York Risk Servs. Group, Inc.*, 778 F.3d 635, 639 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court draws all reasonable inferences

---

[1] When ruling on a motion to dismiss, the Court may consider documents attached to the motion "if they are referred to in the plaintiff's complaint and are central to his claim." *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014).

3

and facts in favor of the nonmovant. *See Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014).

## **DISCUSSION**

Nissan moves to dismiss Zingerman's Complaint in its entirety, contending that: (1) Count I fails because Zingerman did not allege that he satisfied the Magnuson-Moss Act's requirement to exhaust the warrantor's informal dispute resolution mechanism before seeking legal redress; (2) Count II fails because Zingerman did not sufficiently allege that Nissan breached the Limited Warranty; and (3) Count III fails because Zingerman did not adequately support his ICFA claim with particularity. For the following reasons, the Court grants Nissan's motion to dismiss Count I with respect to the Limited Warranty, but denies the remainder of the motion.

### A. Magnuson-Moss Act Claim

Count I asserts a Magnuson-Moss Act claim based on Nissan's failure to provide access to the InTouch system in Q50s despite its numerous representations that purchasers would be able to utilize mobile phone applications through InTouch in the fall of 2013. Nissan argues that Zingerman's Magnuson-Moss claim should be dismissed because the Limited Warranty required Zingerman to utilize the Better Business Bureau Auto Line before filing any lawsuit and Zingerman failed to allege that he made use of the dispute resolution mechanism before filing the instant Complaint. The Court dismisses Count I in part because Zingerman did not allege that he contacted the Auto Line before filing suit. Count I survives in part, however, because Zingerman's Magnuson-Moss claim encompasses other written warranties aside from Nissan's Limited Warranty.

The Magnuson-Moss Act is a federal statute that "allows a 'consumer' to bring a suit where he claims to be 'damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this [Act] or under a written warranty, implied warranty, or service contract.' " *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003) (quoting 15 U.S.C. § 2310(d)(1)). The Act encourages "warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms." 15 U.S.C. § 2310(a)(1). The Act further provides where a warrantor provides a valid informal dispute resolution mechanism and "incorporates in a written warranty a requirement that the consumer resort to such procedure before pursuing any legal remedy," a consumer may not commence a civil action unless it initially resorts to the informal procedure. 15 U.S.C. § 2310(a)(3)(C).

Nissan's Limited Warranty mandates that purchasers contact the Better Business Bureau Auto Line "before exercising rights or seeking remedies under the Federal Magnuson-Moss Warranty Act." The Better Business Bureau Auto Line is recognized as an appropriate form of informal dispute resolution under the Act's requirements. *See Graham v. Hyundai Motor Am.*, 855 N.E.2d 562, 571 (Ill. App. Ct. 2006) (Hyundai's informal dispute resolution procedure established through the Better Business Bureau Auto Line program complied with applicable Magnuson-Moss rules). Nowhere in Zingerman's Complaint does he allege that he utilized the Better Business Bureau Auto Line to attempt to resolve his claim before proceeding to federal court. Because Zingerman did not call the Auto Line first, his Magnuson-Moss claim is dismissed to the extent it rests on Nissan's Limited Warranty.

If Zingerman's claim was restricted to the Limited Warranty he received when he purchased the Q50, he would have failed to state a claim for which relief could be granted

5

because Zingerman did not allege that he followed Nissan's dispute resolution mechanism. The Act, however, permits consumers to additionally bring state law causes of action and courts apply state law regarding warranties. *See Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004) (the Act allows consumers to enforce written and implied warranties in federal court, borrowing state law causes of action). Zingerman's claim encompasses other written affirmations apart from the Limited Warranty.[2] Zingerman alleges that "[t]hrough written advertisements, press releases, public statements, vehicle inserts, and other materials, [Nissan] represented that owners and lessees of Q50s would be able to access the Advertised Apps through InTouch, would be able to access their emails through InTouch, and would be able to access a calendar through InTouch." (Compl. ¶ 11.) Because, under Illinois law, documents given to a consumer before making a purchase can give rise to an express warranty if the assertions become part of the basis of the bargain, *see, e.g.*, *Rosenstern v. Allergan, Inc.*, 987 F. Supp. 2d 795, 805 (N.D. Ill. 2013) ("Illinois courts have concluded that brochures, documents, and advertisements may be the basis of express warranties"); *Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*, No. 02 C 8800, 2005 WL 782698, at *15 (N.D. Ill. Apr. 6, 2005), the Court denies Nissan's motion to dismiss Count I in part. At this stage of the proceedings, taking all reasonable inferences in favor of Zingerman and accepting his allegations as true, Nissan, through its written advertisements and inserts, provided a "written affirmation of fact . . . made in connection with the sale of a consumer product" that related to the capabilities and performance of the InTouch system. *See* 15 U.S.C. § 2301(c) (providing definition for a "written warranty").

---

[2] Nissan argues that the Limited Warranty excludes the existence of any other written warranty because it states that "Infiniti does not authorize any person to create for it any other warranty, obligation or liability in connection with this vehicle." (Limited Warranty at 5.) The Limited Warranty, however, also says that purchasers "may have other rights." Because the Limited Warranty's section on outside warranties is ambiguous, the Court denies this basis for Nissan's motion to dismiss. *See Harmon v. Gordon*, 712 F.3d 1044, 1050 (7th Cir. 2013) (contract interpretation of ambiguous provisions generally presents a question of fact).

Zingerman further alleged he was "aware of" Nissan's representations concerning the InTouch system "prior to purchasing" the Q50 and that the availability of the system was "a material part" of the purchase, thereby implying that he was cognizant of InTouch's abilities before he purchased a Q50. Zingerman therefore sufficiently stated that the InTouch system's capabilities were part of the basis of the bargain. Because the written advertisements that Zingerman relies upon for his claim do not maintain the same requirement that a consumer use an informal dispute resolution mechanism prior to filing suit, *see* 15 U.S.C. § 2310(a)(3)(C) (warrantor must incorporate dispute resolution mechanism in written warranty), Count I survives to the extent it rests on those written affirmations alleged in the Complaint aside from Nissan's Limited Warranty. Accordingly, the Court dismisses Count I in part.

### B. Breach of Express Warranty Claim

An express warranty is created where (1) the seller makes an affirmation of fact or promise; (2) that relates to the goods being sold; and (3) becomes part of the basis of the bargain between the parties. *See* 810 ILCS 5/2-313; *see also, e.g.*, *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 905 (N.D. Ill. 2013). Nissan contends that Zingerman's breach of express warranty claim should be dismissed, primarily arguing that the Limited Warranty, which is a repair warranty, is the only warranty in play and Zingerman failed to allege that Nissan failed to repair a defective part or component.

Again, were Zingerman's allegations related solely to the Limited Warranty, he would not have a claim for breach of express warranty. *See Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047, 1059 (Ill. 2007) (repair warranties that promise only repair or replacement are not express warranties because they contain no affirmations of fact). But as stated above, Zingerman's allegations go beyond Nissan's Limited Warranty to written advertisements,

7

promises, press releases, and vehicle inserts. Drawing reasonable inferences in Zingerman's favor, these documents can give rise to an express warranty because the assertions become part of the basis of the bargain. *See, e.g.*, *Rosenstern*, 987 F. Supp. 2d at 805; *Canadian Pacific Ry.*, 2005 WL 782698 at *15. Because Zingerman alleges that he received documents pertaining to the capabilities of the InTouch system and that they were material to his purchase decision, the question of whether the alleged documents qualify as express warranties at this stage is whether the representations contained therein are warranties or "mere puffery." *See, e.g.*, *Reid*, 964 F. Supp. 2d at 906. The question of whether a statement constitutes an express warranty or mere puffery is generally considered a question of fact. *Redmac, Inc. v. Computerland of Peoria*, 489 N.E.2d 380, 382 (Ill. App. Ct. 1986). "The decisive test for whether a given representation is a warranty or merely an expression of the seller's opinion is whether the seller asserts a fact of which the buyer is ignorant or merely states an opinion or judgment on a matter of which the seller has no special knowledge and on which the buyer may be expected also to have an opinion and to exercise his judgment." *See Royal Business Machs., Inc. v. Lorraine Corp.*, 633 F.2d 34, 41 (7th Cir. 1980).

Here, Zingerman adequately pled that the representations concerning the InTouch system he relied upon in Nissan's written statements, advertisements, and vehicle inserts were of fact rather than of opinion. Zingerman pled that "[t]hrough written advertisements, press releases, public statements, vehicle inserts, and other materials, Defendant represented that owners and lessees of Q50s would be able to access the Advertised Apps through InTouch, would be able to access their emails through InTouch, and would be able to access a calendar through InTouch." (Compl. ¶ 11.) Accepting Zingerman's allegations as true, such statements are not mere sales puffery; instead, they are specific and pointed representations concerning what the InTouch

system was capable of in a Q50. Zingerman additionally stated that before purchasing a Q50, he was aware of the InTouch system and it was a material part of his purchase. (Compl. ¶ 7.) Because the InTouch system allegedly did not work when Zingerman and other putative plaintiffs initially purchased their Q50s, Zingerman has sufficiently pled that Nissan breached its express warranties defining InTouch's capabilities.

Zingerman also sufficiently alleged that Nissan knew about the issue. *See Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 590 (Ill. 1996) (notice requirement for breach of express warranty claims "satisfied only where a manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer"). Zingerman claims that Nissan "has actual knowledge that it breached express warranties with Plaintiff and the other Class members related to the Q50." (Compl. ¶ 50.) More specifically, Zingerman alleges that he attempted to obtain the upgrade that supposedly corrected the InTouch system from an Infiniti dealership but that the dealership was unaware of the upgrade. (*Id.* at ¶ 1.) He further alleges that other putative class members contacted Infiniti about problems with InTouch. (*Id.* at ¶ 19.) These allegations sufficiently state a claim for breach of express warranty with respect to Nissan's written advertisements and brochures. Therefore, the Court denies Nissan's motion to dismiss Count II of the Complaint.

    **C.**    **Illinois Consumer Fraud Act Claim**

Count III asserts unfair practice and deception claims under the ICFA. Nissan challenges Zingerman's claim, arguing that the allegations merely claim a breach of a contractual promise are not pled with sufficient particularity. To state a claim under the ICFA, Zingerman needed to allege: (1) a deceptive act or unfair act or promise by Nissan; (2) Nissan intended Zingerman rely on the deception; (3) the deception occurred in the course of conduct involving trade or

9

commerce; and (4) Nissan caused Zingerman actual damage because of the deception. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012); *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). Claims under the ICFA sound in fraud and therefore must be pled with particularity under Rule 9(b). Under Rule 9(b), claims sounding in fraud must allege the "who, what, when, where, and how" of the fraud. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011); *see Camasta v. Jos. A. Bank. Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (Rule 9(b) requires the plaintiff to state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff") (citation and quotation marks omitted).

Nissan first contends that Zingerman cannot sustain an ICFA claim because his allegations boil down to a breach of contract theory. The Illinois Supreme Court has explained that the breach of a contractual promise, without more, is not actionable under the ICFA because the statute was not intended to allow a consumer plaintiff to "convert any suit for breach of contract into a consumer fraud action . . . or to supplement every breach of contract action with a redundant remedy." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005). The Court denies this basis for dismissal of Zingerman's ICFA claim because Zingerman alleges that the deceptive practice was Nissan's misrepresentation of the Q50's technological features while knowingly "omitting the facts that InTouch could not access" the advertised mobile phone applications, emails, or a calendar. (Compl. ¶ 56.) This allegation is separate and apart from either of Zingerman's warranty claims and is based on Nissan's alleged misconduct in hiding the actual capabilities of the InTouch system from consumers. Taking all reasonable inferences in Zingerman's favor, this is a plausible argument based on Count III as it is currently pled.

Nissan additionally argues that Zingerman has not sufficiently pled the details of Nissan's allegedly deceptive conduct and, in particular, Zingerman failed to establish that Nissan intended him to rely on the misrepresentations and that the misrepresentations caused Zingerman actual damages.

The Court denies Nissan's motion with respect to Count III because the Complaint sufficiently laid out the specifics for the ICFA claim. Zingerman alleges that Nissan emphasized the InTouch system's capabilities of integrating mobile phone applications, emails, and calendars in its press releases, vehicle inserts, and advertisements. (Compl. ¶¶ 1-2, 7, 11, 12-13, 23-25.) Specifically, Zingerman alleges that in January 2013 press releases, Johan de Nysschen, the former president of Infiniti, stated that the InTouch system offered "seamless connectivity and personalization" in the Q50 and that InTouch "provides integration of smartphone apps in a way that is safe and easy to use while driving." (*Id.* at ¶¶12-13.) Zingerman also cited to the Infiniti website which showed the myriad ways users can customize the InTouch system. (*Id.* at ¶¶23-25.) Zingerman additionally stated that Nissan represented that the InTouch applications would be available in the fall of 2013 but were not until, at the earliest, September 2014. These allegations therefore satisfy Rule 9(b) because they explain the "who, what, where, when and how" of the alleged fraud. *Hofer*, 649 F.3d at 615. Nissan (the "who") made specific misrepresentations regarding the availability and capabilities of the Q50's InTouch system (the "what") via press releases, advertisements, vehicle inserts, and its website (the "where" and "how"). Zingerman also gave dates for the press releases and alleged that he was aware of InTouch's promised capabilities before he purchased a Q50 (the "when"). These allegations are "enough to provide [Nissan] with a general outline of how the alleged fraud scheme operated and

of their purported role in the scheme." *Mednick v. Precor, Inc.*, No. 14 C 3624, 2014 WL 6474915, at *4 (N.D. Ill. Nov. 13, 2014).

Nissan contends that it could not have intended Zingerman to rely on any of the alleged representations because Zingerman failed to plead that Nissan made the statements prior to his purchase. The representation must be made before the purchase of the goods. *Camasta*, 761 F.3d at 738. Again, Zingerman alleged that he purchased the Q50 in October 2013 and that he was aware of the InTouch system prior to the purchase. Zingerman further cited to two press releases by Nissan touting the capabilities of InTouch from January 2013. (Compl. ¶¶ 12-13.) These allegations therefore demonstrate that he was aware of the InTouch system and Nissan's representations prior to purchasing the Q50 and are additionally sufficient to establish the "when" prong of Rule 9(b). *See Camasta*, 761 F.3d at 737 (in false advertising case, plaintiff not required to "provide the precise date, time, and location that he saw the advertisement or every word that was included on it"). The Court makes the reasonable inference that Nissan intended consumers to rely on its representations concerning the InTouch system when making purchase decisions.

Regarding Nissan's argument that Zingerman failed to plead that Nissan proximately caused him actual damages, Zingerman alleged that Nissan's "unfair and deceptive acts . . . were the . . . cause of Plaintiff and other Class members . . . receiving a car that lacked the capabilities and functionality Defendant represented the vehicles to have." (Compl. ¶ 59.) In essence, Zingerman claims that he "paid more than the actual value of the merchandise he received." *Camasta*, 761 F.3d at 739. This is sufficient to plead actual damages in a consumer fraud case. *Cf. Stavropoulos v. Hewlett-Packard Co.*, No. 13 C 5084, 2014 WL 2609431, at *4 (N.D. Ill. June 9, 2014) ("[c]ourts have allowed ICFA complaints to go forward on claims for the

diminished value of an allegedly defective product"). Moreover, Zingerman alleged that he purchased the Q50, in part, based on Nissan's representations of the capabilities of InTouch. He has therefore also adequately pled that the misrepresentations were the proximate cause of the damages. Because Zingerman adequately stated a claim for an ICFA violation, the Court denies Nissan's motion to dismiss Count III of the Complaint.

## CONCLUSION

For the foregoing reasons, the Court grants Nissan's motion to dismiss in part and denies in part. Count I is dismissed without prejudice to the extent it relies upon Nissan's Limited Warranty. Counts II and III survive the motion.

_____
Virgi[signature]
United States District Court Judge
Northern District of Illinois

Date: 4/20/2015